# NO. 12-21-00029-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE* |
| | § | *COUNTY COURT AT LAW NO. 2* |
| *R.S., JR.* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

R.S. appeals the termination of his parental rights. In eight issues, he challenges the legal and factual sufficiency of the evidence to support the trial court's judgment. We affirm.

## BACKGROUND

R.S. is the father and S.P.[1] is the mother of R.S., Jr. On April 30, 2019, the Department of Family and Protective Services (the Department) filed an original petition for protection of R.S., Jr., for conservatorship, and for termination of R.S.'s and S.P.'s parental rights. The Department was appointed temporary managing conservator of the child.

At the conclusion of the trial on the merits, the trial court found, by clear and convincing evidence, that R.S. engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (D), (E), (N) and (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between R.S. and R.S., Jr. is in the child's best interest. Based on these findings, the trial court

---

[1] At the conclusion of the trial on the merits, the trial court found, by clear and convincing evidence, that S.P. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), (N), and (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between S.P. and R.S., Jr. is in the child's best interest. Based on these findings, the trial court ordered that the parent-child relationship between S.P. and R.S., Jr. be terminated. S.P. is not a party to this appeal.

1

ordered that the parent-child relationship between R.S. and R.S., Jr. be terminated.  This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied).  Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized.  *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established.  TEX. FAM. CODE ANN. § 161.001 (West Supp. 2020); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.).  First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2020); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.—El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237.  Second, termination must be in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2020); *In re J.M.T.*, 39 S.W.3d at 237.  Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other.  TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated.  TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439.  Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019).  The burden of proof is upon the party seeking the deprivation of parental rights.  *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence.  *Glover v. Tex. Gen. Indem. Co.*, 619

2

S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

## TERMINATION UNDER SECTION 161.001(B)(1)(D) AND (E)

In his first, second, third, and fourth issues, R.S. argues the evidence is legally and factually insufficient to terminate his parental rights pursuant to subsections (D) and (E) of Texas Family Code Section 161.001(b)(1).

## Applicable Law

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(D) (West Supp. 2020). Subsection (D) addresses the child's surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775-76 (Tex. App.—Texarkana 2003, no pet.). The child's "environment" refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The relevant time frame to determine

whether there is clear and convincing evidence of endangerment is before the child was removed. ***Ybarra v. Tex. Dep't of Human Servs.***, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi 1993, no pet.). Further, subsection (D) permits termination based upon only a single act or omission. ***In re R.D.***, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

When seeking termination under subsection (D), the Department must show that the child's living conditions pose a real threat of injury or harm. ***In re N.R.***, 101 S.W.3d at 776; ***Ybarra***, 869 S.W.2d at 577. Further, there must be a connection between the conditions and the resulting danger to the child's emotional or physical well-being. ***Ybarra***, 869 S.W.2d at 577-78. It is sufficient that the parent was aware of the potential for danger to the child in such environment and disregarded that risk. ***In re N.R.***, 101 S.W.3d at 776. In other words, conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. ***Interest of E.S.,*** No. 12-20-00282-CV, 2021 WL 2483788 at *3 (Tex. App.—Tyler June 17, 2021, no pet. h.) We have previously concluded it is illogical to reason that inappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis in his home, is not inherently a part of the "conditions and surroundings" of that place or home. ***In re B.R.***, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). Subsection (D) is designed to protect a child from precisely such an environment. ***Id***.

The court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (West Supp. 2020). Scienter is not required for an appellant's own acts under Section 161.001(b)(1)(E), although it is required when a parent places her child with others who engage in endangering acts. ***Interest of E. S.***, 2021 WL 2483788 at *3. Finally, the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. ***In re N.K.***, 99 S.W.3d 295, 301 n.9 (Tex. App.—Texarkana 2003, no pet.); ***In re M.D.S.***, 1 S.W.3d at 200.

Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. ***In re D.J.***, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); ***In re D.M.***, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.). Termination under subsection (E) must be based on more than a single act or omission. ***In re***

4

***D.M.***, 58 S.W.3d at 812; ***In re D.T.***, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional well-being is required. ***In re D.M.***, 58 S.W.3d at 812; ***In re D.T.***, 34 S.W.3d at 634.

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. ***In re M.R.J.M.***, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); ***In re R.W.***, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Endangering conduct is not limited to actions directed towards the child. ***Tex. Dep't of Human Servs. v. Boyd***, 727 S.W.2d 531,533 (Tex. 1987). It necessarily follows that the endangering conduct may include the parent's actions before the child's birth and while the parent had custody of older children. *See id.* (stating that although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffers injury); *see also* ***In re M.N.G.***, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (holding that courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate). Further, the conduct may occur before the child's birth and both before and after the child has been removed by the Department. ***Walker v. Tex. Dep't of Family & Protective Servs.***, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

A parent's use of narcotics and its effect on his ability to parent may qualify as an endangering course of conduct. ***In re J.O.A.***, 283 S.W.3d 336, 345 (Tex. 2009); *see also* ***In re R.W.***, 129 S.W.3d at 739. Further, evidence that the parent continued to use illegal drugs even though the parent knew his parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being. *See* ***In re M.E.-M.N.***, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied); ***Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.***, 221 S.W.3d 244, 253-54 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under subsection (E). ***Walker***, 312 S.W.3d at 617-18.

Though imprisonment of a parent is insufficient, standing alone, to constitute "engaging in conduct which endangers the emotional or physical well-being of the child," it is a factor to

consider on the issue of endangerment. *See Boyd*, 727 S.W.2d at 533-34; *In re M.D.S.*, 1 S.W.3d at 199. Nonetheless, evidence showing a course of conduct that routinely subjects a child to the probability that he will be left alone because his parent is once again jailed, whether because of the continued violation of probationary conditions or because of a new offense growing out of a continued use of illegal drugs, or because the parent is once again committed to a rehabilitation program, endangers both the physical and emotional well-being of a child. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied).

"A fact finder 'can consider the history of abuse between the mother and the father for purposes of subsection [ ] ... (E), even if the children are not always present.'" *In re Z.M.*, 456 S.W.3d 677, 686 (Tex. App.—Texarkana 2015, no pet.) (quoting *In re A.V.M.*, No. 13-12-00684-CV, 2013 WL 1932887, at *5 (Tex. App.—Corpus Christi May 9, 2013, pet. denied) (mem. op.) (concluding that a history of drug and alcohol abuse lends itself to an unstable home environment and weighs in favor of termination of parental rights)). "Endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533; *In re D.M.*, 58 S.W.3d at 811. It is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Boyd*, 727 S.W.2d at 533; *In re J.J.*, 911 S.W.2d at 440.

**Analysis**

This case began when S.P. gave birth to R.S., Jr. in April 2019. S.P. went to the emergency room under the belief that she was delivering twins. The nurses told S.P. that the baby was in distress and they only detected one heartbeat. S.P. delivered R.S., Jr. shortly thereafter. S.P. tested positive for amphetamine and claimed she tested positive due to exposure through people around her who used drugs. S.P. admitted to using methamphetamine and marijuana in the past; however, she claimed she last used the drugs during the first three months of her pregnancy. R.S., Jr. also tested positive for amphetamine immediately after his birth. S.P. initially denied knowing how R.S., Jr. would test positive and then claimed the child tested positive due to poppy seeds she ingested. After removal, the Department conducted a follow-up hair follicle test, and R.S., Jr. tested positive for methamphetamine, amphetamine, and marijuana.

Prior Department Cases

R.S. has two other children, N.R. and J.L. R.S. testified that he does not "get to have anything to do with them." R.S. further testified that he voluntarily relinquished his rights to

N.R. He also voluntarily relinquished his rights to J.L. because he was not "in the right place then either," and J.L. "was in a good home, and [he] didn't want anything to happen to him." R.S. and S.P. have another child, R.S.2, who was born in May 2020. R.S.2 was removed from S.P.'s care because he tested positive for amphetamine and S.P. tested positive for amphetamine and methamphetamine at the time of his birth. R.S. did not attend the family group conference for R.S.2.

Drug Use

R.S. confirmed that he and S.P. used methamphetamine when she was three months pregnant, but claimed they were not aware of her pregnancy at the time. At the adversary hearing, S.P. stated that she and R.S. were living with friends who used drugs. Both S.P. and R.S. were ordered to complete drug screens. R.S.'s urinalysis was positive for amphetamine, methamphetamine, and marijuana" at "very high" levels. R.S. failed to submit to any other drug tests during the pendency of the case. R.S. admitted to failing both the urinalysis and hair follicle tests. He admitted using drugs approximately one month before that test, which was after R.S., Jr. was born.

Criminal History

At the time of removal, R.S.'s criminal history showed a history of drug use and drug possession. R.S. testified that he has "one possession charge of methamphetamines – well, two now. But I got, when I was a kid, possession of marijuana, but that was about it, and then a couple of theft charges."

R.S. admitted that he was charged with criminal trespass and unlawful possession of a firearm by a felon when S.P. was pregnant with R.S., Jr. According to R.S., he was hunting on family land when a game camera from the neighboring property activated and captured his photograph. He further confirmed that one of his possession of methamphetamine charges predates that incident and one occurred afterward.

R.S. testified that he was arrested in October 2019 for outstanding tickets, which he clarified were unpaid fines; however, he denied being charged with possession of a controlled substance at that time. The week prior to trial, he accepted a plea bargain for possession of a controlled substance, unlawful possession of a firearm, and misdemeanor theft and was sentenced to "three years and twelve months in state jail." R.S. clarified that the possession charge occurred prior to R.S., Jr.'s birth.

R.S. confirmed that his probation had been revoked because he "quit going." And he failed a drug test by testing positive for methamphetamine. R.S. had been incarcerated since October 2019 and was still incarcerated at the time of trial in October 2020. He was released prior to the February 2021 final hearing.

Service Plan

Lindsey Mason, the Department caseworker, testified that R.S. failed to complete any services. The service plan included the following:

> To obtain employment, provide a stable household, complete an ETCADA screening, follow all of the recommendations, complete substance abuse counseling with Michael Cary, parenting classes, and random drug testing.

It further included the "general rules," such as the following:

> Visitations with the child, abide by all visitation rules, no association with known criminals, attend all Department meetings, court hearings, abide by all court orders, demonstrate sobriety through drug testing.

R.S. denied receiving a copy of the service plan. However, the service plan was sent to his last known residence. In addition, R.S. admitted that he knew he would need to perform certain tasks during the case and that R.S., Jr. would not be automatically returned to his care. R.S. further admitted that he never contacted the caseworker to discuss what steps he needed to take. R.S. confirmed that he took no independent actions to learn what he needed to do to regain custody of his child. He admitted failing to complete any services prior to his incarceration. Nor did he complete the drug tests or psychological assessment.

Employment and Housing

R.S. and S.P. continued their relationship after R.S., Jr.'s birth. In the six months between R.S., Jr.'s birth and R.S.'s incarceration, R.S. and S.P. lived in three or four different places, staying with friends. R.S. testified that those friends were using drugs and that those places would not be stable environments for R.S., Jr. And at the time of trial, he did not have a job and was incarcerated. At the time of the final hearing in February, R.S. had no transportation but was employed.

**Conclusion**

From the above evidence, a reasonable factfinder could have formed a firm belief or conviction that R.S. used drugs, continued to associate with known drug-users, and either continued to test positive for drugs or refused to submit to drug testing. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). The trial court could have also determined that R.S. did not complete his service plan and violated his service plan by continuing to use and possess drugs, which led to his incarceration. *See id.* Therefore, we hold that the evidence, viewed in the light most favorable to the finding, is sufficiently clear and convincing that a reasonable trier of fact could have formed a firm belief or conviction that R.S. knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional wellbeing of the child, and engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional wellbeing of the child. *See In re J.F.C.*, 96 S.W.3d at 266.

Therefore, we hold that the evidence is legally and factually sufficient to support termination of R.S.'s parental rights under subsections (D) and (E) of Texas Family Code Section 161.001(b)(1). Accordingly, we overrule R.S.'s first, second, third, and fourth issues as to subsections (D) and (E).[2]

**DISPOSITION**

The judgment of the trial court is ***affirmed***.[3]

GREG NEELEY
Justice

Opinion delivered June 30, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

[2] Because we conclude that the evidence is legally and factually sufficient to support termination of R.S.'s parental rights under subsection (b)(1)(D) and (E), we need not address his issues regarding subsections (b)(1)(N) and (b)(1)(O) of Section 161.001(b)(1). *See* TEX. FAM. CODE ANN. § 161.001(b)(1); TEX. R. APP. P. 47.1; *see also In re K.S.*, 448 S.W.3d 521, 545 n.24 (Tex. App.—Tyler 2014, pet. denied) (when evidence is sufficient to support termination under one ground, appellate court need not address sufficiency challenges to other grounds for termination in Section 161.001(b)); *but see In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (due process and due course of law requirements mandate that an appellate court detail its analysis in an appeal of termination of parental rights under Section 161.001(b)(1)(D) or (E) of the family code if a parent raises such issues.).

[3] R.S. did not raise best interest on appeal.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 30, 2021**

**NO. 12-21-00029-CV**

**IN THE INTEREST OF R.S., JR.**

Appeal from the County Court at Law No. 2

of Henderson County, Texas (Tr.Ct.No. FAM19-0302-CC1)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*